**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

COLEMAN JACKSON and                  :
DANIEL W. GREGG,                     :
                                     :
      Plaintiff,                 :
                                     :          CIVIL ACTION NO.
     v.                         :          1:04-CV-3181-JOF
                                     :
BOBBY K. WHITWORTH, et al.,          :
                                     :
      Defendants.                :


### OPINION AND ORDER

This matter is before the court on Defendant Ray's motion to dismiss [51-1]; Defendant Whitworth's motion to dismiss [53-1]; Defendants Hammonds, Hunt, Nix, Cook, Wetherington, Light, and Walker's motion to dismiss [55-1]; Defendant Newsome and Detention Management Services' motion to dismiss [65-1]; Defendant Sentinel Offender Services LLC's motion to dismiss [68-1]; Defendants Hammonds, Hunt, Nix, Cook, Wetherington, Light, and Walker's motion to supplement motion to dismiss [70-1]; Defendant Whitworth's motion for substitution of counsel and motion to withdraw Phillip Friduss as counsel [72-1]; Plaintiffs' motion for extension of time to serve process and for costs [74-1]; and Defendants Newsome and Detention Management Services' motion for leave to file second amended answer [76-1].

## I.   Background

### A.   Procedural History

Plaintiffs Coleman Jackson and Daniel W. Gregg, on behalf of themselves and others similarly situated, filed suit against Defendants Bobby K. Whitworth, Walter S. Ray, Jr., Jim Wetherington, Garfield Hammonds, Jr., Garland Hunt, Betty Anne Cook, Dr. Eugene P. Walker, Milton E. Nix, Jr., J. Michael Light, Lanson Newsome, Detention Management Services, Inc., and Sentinel Offender Services, LLC, on September 24, 2004, in the Superior Court of Fulton County. Defendants include former and current members of the Georgia State Board of Pardons and Paroles and two private companies. Plaintiffs allege that Defendants engaged in a conspiracy that began with private companies bribing two officials of the Board to convince the state legislature to pass a law that allowed private companies to charge parolees fees for supervision services, including electronic monitoring. Plaintiffs allege that as a result of the conspiracy these parolees were required to pay excessive rates to the security companies. Plaintiffs bring their action under the excessive fines, due process, and ex post facto provisions of the United States and Georgia Constitutions, and Georgia state law, including O.C.G.A. § 51-10-6, providing a civil cause of action for damage to personal property or theft. They seek class certification, injunctive relief, including the imposition of a constructive trust and an accounting, and damages. Plaintiffs estimate that the class is approximately 5,000 similarly situated inmates. On October 24, 2004, Defendants Hammonds, Hunt, Nix, and Light through the Attorney General for the State of Georgia filed

2

a notice of removal to this court.  The court denied Plaintiffs' motion to remand in an order dated April 12, 2005.

### B.    Complaint

Plaintiffs aver that Defendants Whitworth and Ray entered into

> an illegal conspiracy and accepted substantial sums of money from the Defendant Newsome and Defendant Detention Management . . . to obtain legislative authority and the passage of Senate Bill 474 to have private firms perform parole monitoring services including electronic monitoring. Defendants lobbying efforts and influence resulted in amendments to O.C.G.A. § 42-9-21 that allowed the Board to enter into agreements with "any other entities and to require as a condition of relief that the offender pay directly to the provider a reasonable fee for said services or programs."    These amendments became effective April 20, 1998.

*See* Cmplt., ¶ 11.   Defendants Whitworth and Ray received substantial sums of money as a result of the conspiracy.   *Id.*   Defendants Whitworth and Ray, with the other members of the Georgia Board of Pardons and Paroles, adopted a policy "to require as a condition of parole that all parolees convicted of violent offenses . . . be required to undergo electronic monitoring at excessive, non-competitive rates required to be paid to the private monitoring companies for at least four to six months following their release on parole."   *Id.*, ¶ 12. Defendants entered into a contract with Sentinel Offender Services, the successor to Detention Management, "without competitive bidding" in violation of O.C.G.A. § 50-5-50, *et seq. Id.*, ¶ 13.

The parole laws in effect at the time Plaintiffs committed their offenses provided that incarcerated inmates could be considered for parole after serving "the greater of one-third of

their sentence pursuant to O.C.G.A. § 42-9-45 or the recommended months to serve calculated under the Parole Decisions Guidelines pursuant to O.C.G.A. § 42-9-40." This practice simply designated a tentative parole date and "did not require inmate-funded electronic monitoring after being released." *Id.*, ¶ 15. "Because the contract was not subject to competitive bidding, Sentinel Offender Services was permitted to charge excessive, non-competitive rates." *Id.*, ¶ 16. Defendant Whitworth was indicted by a Fulton County grand jury on July 25, 2003, for "taking improper payments from Detention Management in connection with an illegal conspiracy" to procure the passage of Senate Bill 474. *Id.*, ¶ 18. Defendant Whitworth was convicted on June 8, 2004, sentenced to serve six months in jail and pay a fine of $50,000. His conviction was upheld on appeal.

Plaintiffs seek injunctive relief against current members of the Board of Pardons and Paroles prohibiting them from continuing to require Plaintiffs to undergo electronic monitoring at excessive rates and to return the excessive fees charged to Plaintiffs. *Id.*, ¶ 21. Plaintiffs also seek an accounting and constructive trust of the funds collected for electronic monitoring. *Id.*, ¶ 24.

AO 72A
(Rev.8/82)

### C.    Contentions

Defendants contend that Plaintiffs' procedural and substantive due process claims fail because Plaintiffs have no constitutionally protected interest in parole.   Plaintiffs' ex post facto claim is without merit, Defendants argue, because the fee for electronic monitoring is only a term and condition of parole and not a substantive aspect of parole.   Similarly, Defendants aver that the fees for monitoring do not qualify as "fines" under the Eighth Amendment's excessive fine clause.   Defendants also contend that they are entitled to qualified immunity on Plaintiffs' federal constitutional claims, that Plaintiffs' state law claims under the Georgia Tort Claims Act fail because Plaintiffs did not send a proper ante litem notice, and that the two-year statute of limitations period governing claims under 42 U.S.C. § 1983 has run.   Separately, Defendants Lanson Newsome and Detention Management Services, Inc., argue that they are entitled to quasi-judicial immunity.[1]   In a supplemental motion to dismiss, Defendants Hammonds, Hunt, Nix, Cook, Wetherington, Light, and Walker argue that injunctive relief is not available against current members of the Board because all contracts for electronic monitoring were subject to competitive bidding after June 1, 2002.[2]

---

[1]The court GRANTS Defendant Whitworth's motion for substitution of counsel and motion to withdraw Phillip Friduss as counsel [72-1] and GRANTS Defendants Newsome and Detention Management Services' motion for leave to file second amended answer [76-1].

[2]The court GRANTS Defendants Hammonds, Hunt, Nix, Cook, Wetherington, Light, and Walker's motion to supplement motion to dismiss [70-1].

AO 72A
(Rev.8/82)

Plaintiffs respond that the constitutional right they assert under their due process claim is the protection of their property in the form of their prison accounts. Thus, it is irrelevant that Plaintiffs have no liberty interest in parole. Similarly, Plaintiffs assert that their ex post facto and excessive fines claims should proceed because they are not arguing that fees are impermissible; rather, they argue that excessive fees are impermissible. Plaintiffs dispute Defendants' assertion that all electronic monitoring contracts were subject to competitive bidding as of June 1, 2002. Plaintiffs contend that Defendants are not entitled to qualified immunity because it is obvious that excessive fees are unconstitutional, particularly under the bribery circumstances alleged here. Plaintiffs further assert that the protections of the Georgia Tort Claims Act are not available for allegations of bribery, illegal contracts, and the imposition of unconstitutional conditions of parole. Further, Plaintiffs argue that Defendants cannot seek state immunity after consenting to removal of the case to federal court. Finally, Plaintiffs contend that sovereign immunity does not apply to constitutional torts.

## II.     Discussion

### A.     Service of Process (Whitworth and Ray)

It is undisputed that Defendants Whitworth and Ray were not served with process at the time the complaint was filed in state court because Plaintiffs' counsel could not determine their whereabouts.   Some Defendants then removed the suit to this court and the parties briefed Plaintiffs' motion to remand.   While that was happening, on November 12, 2004, Plaintiffs sent to Defendant Whitworth and Defendant Ray a letter requesting a waiver of service summons form.   Defendants Whitworth and Ray did not return the form.   Eventually, counsel for Defendants had actual notice of the complaint because counsel for Defendant Whitworth filed a notice of appearance on December 30, 2004, and for Defendant Ray on December 22, 2004.   Defendant Whitworth was formally served on March 16, 2005, and Defendant Ray on March 30, 2005.

Counsel for Plaintiffs aver that because counsel for Defendants Whitworth and Ray were participating in court proceedings, including the briefing of Plaintiffs' motion to remand, they believed that Defendants Whitworth and Ray were not going to require formal service of process.   It was not until after the 120-day window under Rule 4(m) passed that Plaintiffs' counsel learned that Defendants Whitworth and Ray would not be waiving formal service of process.   Plaintiffs state they expended $600 in fees for perfecting service and $600 in attorney's fees in filing a motion for extension of time to serve process.

AO 72A
(Rev.8/82)

Defendants Whitworth and Ray argue that Plaintiffs' counsel did not even inquire whether they would waive formal service of process until after the 120-day deadline under Rule 4(m) had passed.  It was not until six months after the complaint was filed that counsel for Plaintiffs requested that summons be issued for Defendants Whitworth and Ray.

The time for service under Federal Rule of Civil Procedure 4(m) expired on January 27, 2005.  Under Federal Rule of Civil Procedure 4(m), the district court has the discretion to extend the time to serve process with or without good cause.  *See Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129 (11th Cir. 2005).  In *Horenkamp*, the plaintiff mistakenly believed she had until March 26, 2004, to perfect service of her complaint.  On February 26, 2004, the plaintiff sent a second request for waiver of service to defendant. Hearing nothing, she made formal service on defendant on March 24, 2004, twenty-nine days after the 120-day time limit.  The district court ruled that although the plaintiff had not shown good cause for failure to timely serve, good cause was not a requirement under the amended version of Rule 4(m).  Finding that the defendant had actual notice of the suit and it had now been properly served, the district court extended the time for service.  On appeal, the Eleventh Circuit agreed that the 1993 amendments to Rule 4(m) removed the "good cause" requirement for extension of time to serve process.  *Id*. at 1132.  The court noted that the Advisory Committee had suggested that the court could consider such factors as whether the applicable statute of limitations would bar the refiled action, and whether the defendant was evading service or concealing a defect in attempted service.  *Id*.  Ultimately, the court held that the

8

district court did not abuse its discretion in extending the time for service of process under the circumstances presented in *Horenkamp*.

Although the court does not think it a particularly careful manner in which to conduct litigation, Plaintiffs' counsel apparently was waiting for some word from defense counsel as to whether formal service of process would be waived.  One might think the preferable approach is to not wait until after the expiration of the 120-day period for service under Rule 4(m) in order to ascertain whether formal service will be required.  In any event, it is clear that Defendants Whitworth and Ray and their counsel had actual notice of the suit and were participating in the defense of the suit as early as the end of 2004.  Further, defense counsel remained modestly silent as to whether they would challenge service until they were directly asked by Plaintiffs' counsel.  Under the circumstances presented here, the court determines it will exercise its discretion to GRANT Plaintiffs' request for leave to extend the period for service [74-1].

Plaintiffs also seek their costs in perfecting formal service of process.  Under Federal Rule of Civil Procedure 4(d)(2), if a defendant who receives a request for waiver of service form fails to comply with the request, "the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown."  *Id.*  Here, as explained above, the court finds that both parties took strategic positions with regard to service, and thus, the court finds that Defendants had good cause for not complying with the

request sent by Plaintiffs.   As such, the court DENIES Plaintiffs' motion for imposition of costs of service.

**B.     Newsome and Detention Management Services, Inc.**

In their complaint, Plaintiffs allege only that Defendants Newsome and Detention Management Services, Inc., were involved in the scheme to bribe Defendants Whitworth and Ray to influence the Georgia legislature to amend O.C.G.A. § 42-9-21 to allow the Board to contract with private companies to provide monitoring services.   There is no allegation in the complaint that Newsome or Detention Management Services, Inc., ever actually imposed allegedly excessive fees on Plaintiffs.   In fact, Plaintiffs allege that the first contract entered into by the Board after the legislative amendment allegedly procured through bribery, was with Sentinel Offender Services, the successor of Detention Management.   *See* Cmplt., ¶ 13.[3] Furthermore, Defendants aver that as of October 31, 2000, all of the assets of Detention Management Services, Inc., were rolled over into Defendant Sentinel Offender Services, LLC. As the court explains more fully below, Plaintiffs are not really claiming they are constitutionally injured by the alleged bribery scheme that resulted in the amended legislation because they admit that it is permissible for the Board to impose some level of fee against the parolee for the monitoring services.   Plaintiffs contend, rather, that the private companies

_____

[3]The court notes that this allegation seems to contradict paragraph 17 of Plaintiffs' complaint which asserts: "The Defendant Sentinel is the successor to Detention Management succeeding to Detention Management contracts to provide electronic monitoring at excessive non-competitive rates . . . ."   *See* Cmplt., ¶ 17.

have charged a "constitutionally excessive" fee.  Plaintiffs, however, do not allege in their complaint that the private companies charged an excessive fee in order to fund the bribery scheme.  For that reason, the court finds the allegations of bribery irrelevant to Plaintiffs' actual complaint.  And, because there is no allegation of wrongdoing on the part of Newsome and Detention Management Services, Inc., with respect to the actual imposition of fees, the court GRANTS their motion to dismiss [65-1].[4]

### C.    Characterization of Plaintiffs' Complaint

Before the court can address Defendants' motions to dismiss, it is necessary to properly characterize the claims in Plaintiffs' complaint.  Plaintiffs do not set forth in any great detail the bribery scheme they allege.  The court takes judicial notice of the opinion of the Court of Appeals of Georgia in *Whitworth v. State*, 275 Ga. App. 790 (2005), affirming the criminal conviction of Defendant Whitworth.  There, the Court of Appeals found that the day before final approval of Senate Bill 474, Defendant Whitworth accepted $75,000 from Lanson Newsome, a principal of Detention Management Services, Inc.  Linda Thompson, an employee of the Board, also testified that Defendant Ray told her that he (Ray) had accepted money from Mr. Newsome to assist in obtaining the passage of Senate Bill 474.  There is no

---

[4]Because the court grants Defendants Newsome and Detention Management Services, LLC's motion to dismiss on the basis of failure to allege that they imposed the alleged unconstitutional fees on Plaintiffs, the court need not address their alternative quasi-judicial immunity argument.

11

further description of any payments made to Defendant Whitworth or Defendant Ray in the opinion of the Court of Appeals.

The court is puzzled, however, about the legislative act underpinning the scheme alleged by Plaintiffs. In *Whitworth*, the Court of Appeals noted that Senate Bill 474 amended O.C.G.A. § 17-10-3(f) to transfer supervision of 25,000 misdemeanants from the State Department of Corrections to the individual counties. Private probation companies, like Detention Management Services, Inc., apparently desired this amendment because the individual counties could then choose to contract out their supervisory function to private companies. The Court of Appeals specifically noted that Senate Bill 474 "essentially had no effect on Whitworth's agency, the Paroles Board." *Id.* at 790. Further, Senate Bill 474, attached to Defendant Ray's motion to dismiss, directly references O.C.G.A. § 17-10-3(f). In contrast, the Georgia statute cited by Plaintiffs, O.C.G.A. § 42-9-21 (governing the supervision of persons placed on parole), was amended in 1998 by Senate Bill 449. *See* 1998 General Acts and Resolutions, p. 1376, § 1. As such, the court cannot determine that Plaintiffs' complaint alleges facts which link Defendant Whitworth's bribery conviction to the fees required by private companies administering Plaintiffs' electronic monitoring program for parolees. The bribery scheme as it pertains to Senate Bill 474, therefore, is unrelated to any of the causes of action and, therefore, irrelevant.

Plaintiffs also contend that "fees [for electronic monitoring] were charged under agreements with the corporate defendants that bypassed the normal bidding process and were

12

the product of bribes given by one defendant to at least one other defendant." *See* Plaintiffs' Response to Motion to Dismiss ("Response"), at 1.[5]   Plaintiffs state their complaint is premised on the notion that it was improper for "Defendants to conspire to charge inmates an exorbitant fee more than over 500% greater than any supervisory fee ever upheld by any state or federal court." *Id.*   Plaintiffs recognize that in *Hamm v. Ray*, 272 Ga. 659 (2000), the Supreme Court of Georgia approved the imposition of a nominal fee for electronic monitoring.   Plaintiffs, instead, argue that charging an excessive fee as the product of a bribe violates the United States Constitution because the fee is not nominal and is not rationally related to making the government whole for the services it provides.

Before the court delves too deeply into the constitutional issues raised by Plaintiffs, however, it is necessary to say that the court agrees with Defendants that the *Halper-Hudson*[6] line of authority cited by Plaintiffs is not directly on point.   As an initial matter, *Halper* was clearly overruled by the Supreme Court in *Hudson*.   Furthermore, *Hudson* deals primarily with the double jeopardy clause.   As such, it may be  relevant to Plaintiffs' ex post facto and excessive fines claims, but there is no due process aspect to *Hudson*. *See*, *e.g.*, *Smith v. Doe*, 538 U.S. 84, 92-93 (2003) (applying *Hudson* to ex post facto analysis of Alaska's sex

---

[5]At this point this is only a conclusory allegation of conspiracy and its object.   Based on the other pleadings, it may be that the proof may not support the contention that this was an object of the conspiracy.

[6]*See United States v. Halper*, 490 U.S. 435 (1989), and *Hudson v. United States*, 522 U.S. 93 (1997).

13

offender registration law).        Finally, the court does not have a clear understanding of how the electronic monitoring program actually operates.        In their briefing, Defendants describe the regulatory scheme as one where the Board has the discretion to offer parole to certain offenders so long as they agree to electronic monitoring which will be conducted by a private company.        A prisoner would have the option of rejecting such an offer and serving out the original sentence.        *See* Defendant Ray's Reply Brief, at 6.        Because there is a difference between mandatory punishment in addition to the original sentence and the requirement of paying for electronic monitoring as part of the cost of discretionary parole to shorten the original sentence, Defendants argue the Constitution is not implicated.        Plaintiffs have not disputed Defendants' characterization of the program, and Plaintiffs' complaint fails to set forth any details about the manner in which the electronic monitoring system actually is organized.        If the program truly works as Defendants have described, then Plaintiffs accepted the Board's offer of this program.        If the court concludes that such an acceptance was knowing and voluntary, then none of the analysis below is actually relevant, and Plaintiffs have likely waived any constitutional challenges they have to Defendants' actions.        *See generally North Carolina v. Alford*, 400 U.S. 25 (1970); *see also Gaskins v. Cosby*, 371 F.3d 820, 822 (11th Cir. 2004).

### D.        Excessive Fines

As the court described above, Plaintiffs admit there is nothing unconstitutional about a statute which allows the Board to order as a condition of parole that offenders pay directly

14

to private companies a "reasonable fee" for electronic monitoring.   Significantly, it is the private companies that apparently set a $9 per day fee that Plaintiffs allege is excessive. Furthermore, there is no allegation in the complaint that any portion of the fee is paid to the government (or to those who allegedly accepted bribes, for that matter).   In *Browning Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989), the Supreme Court held that the excessive fines clause does not "constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded."   *Id.* at 263; *see also id.* at 265 n.7 (noting that at times in the nation's history, "fines" included only that money paid to the government).   The Eighth Amendment "was intended to limit only those fines directly imposed by, and payable to, the government." *Id.* at 268.   Because Plaintiffs have not alleged that any portion of the fee for electronic monitoring flows into the government treasury or is set by the government, the court finds that the fee cannot be a "fine" within the scope of the Eighth Amendment.   *See*, *e.g.*, *Global Relief Foundation, Inc. v. O'Neill*, 207 F. Supp. 2d 779, 806-07 (N.D. Ill. 2002) (rejecting plaintiff's excessive fine argument because plaintiff had not shown any payment to the government, despite the fact that Department of Treasury had frozen portion of plaintiff's assets); *Parsons v. Pond*, 126 F. Supp. 2d 205 (D. Conn. 2000) (rejecting excessive fine argument where plaintiff was required to attend weekly sessions with licensed psychiatrist as part of his supervised release because money was paid to psychiatrist and not to government).

Even assuming that the electronic monitoring fees could come within the scope of the Eighth Amendment, the court must next consider whether the fee is a "fine." *See Austin v. United States*, 509 U.S. 602, 622-23 (1993) (holding that Eighth Amendment could apply in both civil and criminal actions). The court then determines whether such a fine is excessive. *Id.* Plaintiffs' arguments attempt to conflate these two separate steps. Plaintiffs admit that the Board may impose some fee for electronic monitoring, but at some unknown point, the fee becomes so high that it is disproportional to the offense and therefore unconstitutional. However, under the Supreme Court's instruction in *Austin*, this court must first determine whether the fee is a form of "punishment" or not.

In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Supreme Court determined that a forfeiture ordered pursuant to 18 U.S.C. § 982(a)(1) which directs a court to order forfeiture as an additional sanction for failing to report taking greater than $10,000 in cash outside of the United States was "punishment" for the purposes of the excessive fines clause. Deterrence historically has been considered as punishment, and there was no "remedial" purpose to the forfeiture for the purpose of compensating the government for some kind of loss. 524 U.S. at 328-29. So long as there is some punitive aspect to the forfeiture, it would come within the scope of the Eighth Amendment. *Id.* at 329 n.4; *see also Austin*, 509 U.S. at 622 ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment").

16

It is not clear to the court whether the electronic monitoring fee is purely remedial or whether there is some aspect of punishment associated with it.  It is true that the fee is imposed as a condition of home confinement, and home confinement surely is a punishment. Thus, on the one hand, the fee could be described as extracting a payment on account of an inmate having committed a crime.  On the other hand, however, the fee appears to serve the purpose of making the state whole for the cost of the electronic monitoring and, therefore, would be remedial.  Furthermore, a failure to pay the fee would not extend the original term of punishment imposed on a plaintiff, although the court supposes such a failure would forfeit the discretionary benefit of being on home confinement as opposed to incarceration.  The fees do no vary with respect to what kind of crime was committed.  *See also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 251-52 (4th Cir. 2005) (holding that charging pretrial detainee one dollar per day fee for housing was not "punishment" under *Bell*); *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000) (where inmate brought § 1983 action against warden to challenge collection of fees for housing costs during incarceration, court held that fees were not fines); *Waters v. Bass*, 304 F. Supp. 2d 802, 808-09 (E.D. Va. 2004) (holding that fee imposed by state Department of Corrections for room and board at Virginia Beach City Jail was not punishment for criminal offense, was assessed against all prisoners regardless of the nature of their crime or length of sentence and therefore was not "punishment" under Eighth Amendment).

17

Even if the court were to conclude that the electronic monitoring fees served some "punitive" purpose and therefore constituted "punishment" within the Eighth Amendment, the court would next have to consider whether the fees were "excessive." In *Bajakajian*, when analyzing whether a fine is "excessive," the Supreme Court adopted the "gross proportionality" standard set forth in its cruel and unusual jurisprudence. Thus, the court must "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." 524 U.S. at 336-37. The Named Plaintiffs have not set forth their offenses in their complaint and, thus, have not alleged facts to show that the fees are excessive. Additionally, the court notes that this type of proportionality analysis would preclude easy administration of a class action. The court presumes that it would need to compare the alleged $9/day figure to each individual plaintiff's criminal offense. Accordingly, the court GRANTS Defendants' motions to dismiss with respect to Plaintiffs' excessive fine claim.

## E.    Ex Post Facto

"The *ex post facto* clause prohibits the enactment of statutes which . . . make more burdensome the punishment for a crime, after its commission." *United States v. Abraham*, 396 F.3d 1033, 1037 (11th Cir. 2004). To establish an *ex post facto* violation, the law must be (1) retrospective and (2) the offender must be disadvantaged by it by altering the definition of criminal conduct or increasing the punishment for the crime. *Id.*; *see also Gaskins v. Cosby*, 371 F.3d 820, 822 (11th Cir. 2004); *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir.

18

2001) (citing *Garner v. Jones*, 529 U.S. 244, 255 (2000)).   Where a condition is "merely procedural and does not affect the quantum of punishment attached to the crime, there is no ex post facto violation even when the statute is applied retroactively." *Hock v. Singletary*, 41 F.3d 1470, 1471-72 (11th Cir. 1995).   In *Hock*, the court determined that a statute limiting the availability of an early release program to an inmate did not come within the scope of the ex post facto clause because the statute was enacted with the purpose of relieving prison overcrowding and not for the benefit of inmates.   *Id.* at 1472.   In *Gaskins*, in return for the state allowing him to participate in a more advantageous early release program, the prisoner gave away his rights to early release credits earned under previous statutes.   The court held that the ex post facto clause of the Constitution did not bar a "state from permitting a prisoner to bargain away earned release credits, any more than it prohibits a state from permitting a defendant to bargain away all of his trial rights or his right to appeal once convicted." *Id.* at 822-23.

In *Smith v. Doe*, the Supreme Court considered whether Alaska's sex offender registration law violated the Constitution's ex post facto clause.   The Court first considered whether the Alaska legislature intended to impose civil proceedings.   538 U.S. at 92.   Finding that the legislature did not intend to enact punitive measures, the Court then turned to whether the statutory scheme was so punitive in nature or effect that it essentially negated the legislature's intention to deem it civil. *Id.*   The court follows this analysis.

As the court noted above, the program here apparently offers an inmate the option of being released on parole with home confinement with electronic monitoring or serving out his original sentence.   Based on this characterization, the offer of home confinement with electronic monitoring does not have the result of increasing the punishment for an offense and therefore cannot run afoul of the ex post facto clause.   Furthermore, under the statute authorizing the terms and conditions of parole, the Board is permitted to "adopt general rules concerning the terms and conditions of parole.  . . .   The rules, both general and special, may include, among other things, a requirement that the parolee shall not leave this state or any definite area in this state without the consent of the board."   *See* O.C.G.A. § 42-9-44.   As such, the court also concludes that the option for release from prison with home confinement and a monitoring fee is a procedural element of parole which does not affect the quantum of punishment for an offense.

Thus, the court proceeds to the second step of the analysis – whether the manner in which the program is operated is so punitive in its effect that it negates the legislature's intent to deem it civil.   Under this analysis, the court looks to the seven-factor test set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963):   Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be

20

connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry.   *Id.* at 168-69.   The statute does not involve the application of an affirmative disability or restraint, it has not historically been regarded as a punishment, and it does not come into play only on a finding of scienter.   The operation of the fees for electronic monitoring does not promote the traditional aims of punishment-retribution and deterrence.   It applies to behavior that is already a crime and does not relate to any alternative purpose.

Only the final inquiry gives the court any pause.   Plaintiffs appear to allege that the fees charged for electronic monitoring are excessive in relation to the assigned purpose.   At the motion to dismiss stage, the court does not have any information as to whether a fee of $9 per day bears any relation to the actual cost of monitoring.   However, it is clear from *Hudson* and its progeny that this court may not consider the implementation of the statute when analyzing Plaintiffs' ex post facto challenge.   *See Hudson*, 522 U.S. at 100 (the characterization of a statute as criminal or civil is made by examining "the statute on its face").   *See also Smith v. Doe*, 538 U.S. at 106 (Thomas, J., concurring) (noting there is no place for an "implementation-based" challenge in ex post facto jurisprudence, to "the extent that the conditions result from the fact that the statute is not being applied according to its terms, the conditions are *not* the effect of the statute, but rather the effect of its improper implementation") (quoting *Seling v. Young*, 531 U.S. 250, 273-74 (2001) (Thomas, J., concurring)).   Thus, even if discovery would produce information to show that $9 per day is

21

some degree higher than the actual cost, the court could not apply that information to Plaintiffs' ex post facto claim. Thus, the court GRANTS Defendants' motions to dismiss with respect to Plaintiffs' ex post facto claim.[7]

### F.    Due Process[8]

To establish a due process violation, a plaintiff must have been deprived of a liberty or property interest protected under the due process clause. *See*, *e.g.*, *Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000).[9] Defendants aver that in Georgia there is not a constitutionally

---

[7]Similarly, in *Hamm v. Ray*, 272 Ga. 659 (2000), the Supreme Court of Georgia determined that a requirement that a parolee pay an electronic monitoring fee did not violate the ex post facto clause of the Georgia constitution because such reparations or restitution are authorized conditions of parole under O.C.G.A. § 42-9-44(a). In *Hamm*, contrary to Plaintiffs' assertions, *see* Response, at 2-3, the court did not set forth the amount of the electronic monitoring fee. Rather, it stated that the amount to be paid into the victim's rights fund was $10 per month. It never established what the electronic monitoring fee was. Plaintiffs aver that *Hamm* does not apply because the electronic monitoring fees applied here are "disproportionate." However, as the court described above, under the facts presented here, the court cannot engage in a "disproportionate" analysis.

[8]In their response to Defendants' motions to dismiss, Plaintiffs agree that they are not raising a substantive due process claim, and thus, the court does not address this issue further. *See* Response, at 8 n.6.

[9]In their response to Defendants' motions to dismiss, Plaintiffs, correctly, back away from the *Halper-Hudson* line of cases, but instead argue that *Hudson* states that other provisions in the United States Constitution "reaffirm" the principle that "post-conviction fees may not be 'downright irrational' or 'excessive.'" *See* Response, at 5 (citing *Hudson*, 522 U.S. at 103). *Hudson*, in turn, articulates that the due process clause "protect[s] individuals from sanctions which are downright irrational," (citing *Williamson v. Lee Optical*, 348 U.S. 483 (1955)) and the Eighth Amendment protects against excessive fines (citing *Austin v. United States*, 509 U.S. 602 (1993)).

AO 72A
(Rev.8/82)

protected liberty interest in parole.  That is correct, *see Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir. 1994), but irrelevant because Plaintiffs contend that they have a constitutionally protected interest in their prison inmate account.  As Plaintiffs, by the very nature of their complaint, are no longer in prison, the court finds no allegation in their complaint that they have paid the electronic monitoring fee from an inmate account.  Plaintiffs, however, claim that they must pay the electronic monitoring fee out of their own resources, and for the purposes of this analysis, the court will assume that the government has interfered with a property right by imposing fees on Plaintiffs for electronic monitoring.

However, Plaintiffs cannot establish that this "deprivation" took place without proper notice.  Plaintiffs have the opportunity to accept or reject the offer for early release on parole.  Thus, Plaintiffs have notice of the "deprivation."  Furthermore, the court also finds that Plaintiffs would have the opportunity to be heard through their prison grievance system.  Finally, as the court explained above, a prisoner may waive a right to due process by accepting the Board's offer of parole with home confinement.  Accordingly, the court GRANTS Defendants' motions to dismiss with respect to Plaintiffs' due process claims.

## G.    Defenses

In addition to the merits questions addressed above, the court also finds the defenses raised by Defendants to be problematic for Plaintiffs' complaint.

23

1.      <u>Statute of Limitations</u>

The court finds the factual allegations in Plaintiffs' complaint deficient with respect to the time frame, or more precisely, lack thereof.   The Named Plaintiffs allege only that they "were formerly inmates incarcerated by the Department of Corrections of the State of Georgia."   *See* Cmplt., ¶ 1.   Although the information surely is within their possession, the complaint does not allege when they entered parole, when fees for electronic monitoring were imposed on them, and what the amounts of those fees are.   The complaint also does not allege even whether the Named Plaintiffs are still subject to electronic monitoring fees.   Among other things, these issues are relevant to Defendants' statute of limitation arguments.   In fact, Plaintiffs' complaint is devoid of any time frame but for the allegation of when Defendant Whitworth received a bribe to influence activity before the state legislature.

Similarly, in their supplemental motion to dismiss, the current members of the Board provide the testimony of Tracy Masters, the Legal Director for the Board, who states that as of June 1, 2002, the contract for offender funded electronic monitoring was subject to the bidding process and, thus, presumably not excessive.   *See* Masters Aff., ¶ 6.   It is true that the court may accept testimony on whether the court has jurisdiction over Plaintiffs' complaint at the motion to dismiss stage.   *See*, *e.g.*, *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).   However, Plaintiffs have made some allegation that they have not received all of the discovery directed by the court at its May 9, 2005 conference and further that they believe the date that competitive bidding resumed was not until sometime in 2003.

24

Thus, the court cannot resolve this factual dispute, but it certainly highlights to Plaintiffs the potential statute of limitations problems with their complaint.   In the same light, Defendant Nix was appointed to the Board on June 13, 2002, Defendant Light served on the Board from July 3, 2002 through December 2004, and Defendant Hunt was appointed on January 21, 2004, potentially after competitive bidding resumed.

Finally, Plaintiffs claim without any supporting facts that the nature of the conspiracy here, as well as heretofore unmentioned "fraudulent concealment" issues, "present complex tolling questions." *See* Response, at 16.   It is difficult for the court to assess this argument as Plaintiffs provide no factual detail to support it.   Presumably, Named Plaintiffs knew at all times the amount they were paying for electronic monitoring, so such a fact could not be the basis for a fraudulent concealment claim.   Plaintiffs may allege that the fact the contract was not put through the competitive bidding process was unknown to them, but the lack of competitive bidding, itself, is not the basis for Plaintiffs' constitutional claims.   Plaintiffs simply argue that $9 per day should be per se constitutionally deficient whether based on competitive bidding or not.

2.   Qualified Immunity

In *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc), the Eleventh Circuit reviewed the standard for qualified immunity.   Qualified immunity "shields public officers from liability so long as the transgressed right, given the circumstances, was not already clearly established, 'that is "whether it would be clear to a reasonable officer that his conduct

25

was unlawful in the situation he confronted.'"'" *Id.* at 1282.   "The applicable law is clearly established if the 'preexisting law dictates, that is, truly compels,' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Id.*   "In rare circumstances, a right may be so clear from the text of the Constitution or federal statute that no prior decision is necessary to give clear notice of it to an official." *Id.*   Because the court granted Defendants' motions to dismiss on Plaintiffs' constitutional claims, the court need not address qualified immunity but to state that the court's discussion indicates that Plaintiffs' rights in these areas are not clearly established.[10]

### 3.   GTCA and Ante Litem

Plaintiffs sue the current members of the Board in their individual and official capacities.   *See* Cmplt., ¶ 3.   Plaintiffs sue former members of the Board only in their individual capacities.   *Id.*, ¶ 2.   With respect to Defendants in their official capacity, Plaintiffs are correct that sovereign immunity is not a bar to actions alleging a violation of constitutional rights.   *See*, *e.g.*, *Kilgo v. Department of Corrections*, 202 Ga. App. 50 (1991). However, Plaintiffs' state law claims against current and former members of the Board in their individual capacity are barred.   *See* O.C.G.A. § 50-21-25(a) (a "state officer or employee

---

[10]Plaintiffs may be correct that at least Defendants Whitworth and Ray should have known that the acts they committed in furtherance of the bribery scheme were improper. However, as the court stated above, Plaintiffs' complaint alleges no facts to link the bribery scheme to the allegedly excessive fees.

who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefore"); *see also Mattox v. Bailey*, 221 Ga. App. 546 (1996) (where inmate filed suit against prison correctional officer alleging the officer beat him, court dismissed plaintiff's state law claims because the alleged battery arose from performance of officer's official duties).

The procedural requirement of ante litem notices does not apply to federal constitutional claims filed in federal court, and, thus, the absence of such notices cannot be a defense to suit in federal court. *See, e.g., Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir. 1980). The lack of notice, however, does bar Plaintiffs' state law claims against governmental entities. *See, e.g., Dague v. Riverdale Athletic Association*, 99 F.R.D. 325, 327 (N.D. Ga. 1983) (Forrester, J.) (dismissing state law claim against defendant because complaint failed to allege that proper ante litem notice had been given to municipal defendant, but retaining federal claims against municipal defendant).

## H.     Remaining Matters

The court notes that no party specifically discussed Plaintiffs' state law claim under O.C.G.A. § 51-10-6, providing a civil cause of action for damage to personal property or theft, in briefing the motions to dismiss. As noted above, however, Plaintiffs cannot raise this claim against current or former Board members in their individual capacities. Further, Plaintiffs did not provide any ante litem notice to the state and, thus, cannot raise the claim against the

27

state Defendants in their official capacities.   The only claim remaining before the court is

Plaintiffs' O.C.G.A. § 51-10-6 claim against Defendant Sentinel.[11]

## III.    Conclusion

The court GRANTS Defendant Ray's motion to dismiss [51-1]; GRANTS Defendant

Whitworth's motion to dismiss [53-1]; GRANTS Defendants Hammonds, Hunt, Nix, Cook,

Wetherington, Light, and Walker's motion to dismiss [55-1]; GRANTS Defendant Newsome

and Detention Management Services' motion to dismiss [65-1]; GRANTS IN PART AND

DENIES IN PART Defendant Sentinel Offender Services LLC's motion to dismiss [68-1];

GRANTS Defendants Hammonds, Hunt, Nix, Cook, Wetherington, Light, and Walker's motion

to supplement motion to dismiss [70-1]; GRANTS Defendant Whitworth's motion for

substitution of counsel and motion to withdraw Phillip Friduss as counsel [72-1]; GRANTS

IN PART AND DENIES IN PART Plaintiffs' motion for extension of time to serve process

and for costs [74-1]; and GRANTS Defendants Newsome and Detention Management

Services' motion for leave to file second amended answer [76-1].

-------

[11]The court GRANTS IN PART AND DENIES IN PART Defendant Sentinel Offender Services LLC's motion to dismiss [68-1].

**IT IS SO ORDERED** this 23rd day of March 2006.


s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)